**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Calvin Morris, and<br>Celia Morris,<br><br>　　　　Plaintiffs,<br>v.<br><br>Midwest Resale Specialist Inc.,<br>Aaron Hanson, and<br>Atlantic Specialty Insurance Company<br><br>　　　　Defendants. | Case No. 25-cv-3842 (LMP/DJF)<br><br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by Defendant and its collection agents in their illegal efforts to collect a consumer debt from each Plaintiff.

2.  The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

-1-

## JURISDICTION

3.  Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, 15 U.S.C. § 1692, and pursuant to 28 U.S.C. § 1367 for any pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

4.  Venue is proper because the acts and transactions occurred here, each Plaintiff resides in Minnesota, and Defendant transacts business here.

5.  Defendants have each transacted business within the State of Minnesota by attempting to collect a debt from each Plaintiff via the telephone and mails while each Plaintiff was located within and permanently residing within the State of Minnesota.

6.  Defendants have transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

7.  Plaintiff Calvin Morris is a natural person who resides in the City of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.  Plaintiff Celia Morris is a natural person who resides in the City of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

9.  Each Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's

conduct and that is likely to be redressed by a favorable decision in this matter.

10.   Defendant Midwest Resale Specialist Inc, (hereinafter "Defendant MRS") is a corporation formed under Minnesota law and a collection agency licensed in Minnesota and operating from a principal office address of 412 South 4th Street, Suite 1250-E, Minneapolis, MN 55415, and/or 710 Madison Street NE, #1, Minneapolis, MN 55413, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11.   Defendant Aaron Hanson, (hereinafter "Defendant Hanson") is a natural person employed as a debt collector by Defendant MRS, licensed in Minnesota and operating from a principal office address of 412 South 4th Street, Suite 1250-E, Minneapolis, MN 55415, and/or 710 Madison Street NE, #1, Minneapolis, MN 55413, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

**Surety Bond Holder**

12.   Defendant Atlantic Specialty Insurance Company (hereinafter "Defendant Atlantic Specialty") is an insurance company, a Delaware corporation, and surety bond provider authorized to conduct business in the State of Minnesota, with a principal office address of 100 William Street, New York, NY 10038.

13.   Under Minnesota law, Defendant Atlantic Specialty's agent for service of process is:

Commissioner of Commerce

Minnesota Department of Commerce

Enforcement Division

85th Place East, Suite 280

Saint Paul, MN 55101

14. Defendant Atlantic Specialty issued a surety bond #810008685 pursuant to Minn. Stat. § 332.34, which guarantees compliance with Minnesota law by licensed collection agencies, including Defendant MRS.

15. Defendant Atlantic Specialty is obligated under the surety bond to cover damages suffered by individuals as a result of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Minnesota Collection Agencies Act, Minn. Stat. § 332.31 et seq.

16. Defendant Atlantic Specialty, by issuing a surety bond for Defendant MRS, by the explicit terms of the bond, is directly and indirectly answerable for the unlawful efforts to collect an alleged debt from each Plaintiff, as further described in this complaint.

## FACTUAL ALLEGATIONS

17. Within one year immediately preceding the filing of this complaint, Defendant MRS and Hanson attempted to collect from each Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, an alleged obligation for unpaid bail bond from in the State of Minnesota of $7,162.00 ("account") which was reduced to judgment.

18. Each Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect

to this debt and to the claims made herein.

**Defendant's Illegal Collection Conduct**

19. On or about September 8, 2025, Defendant Aaron Hanson engaged in the unauthorized practice of law in Minnesota by drafting and filing in state court a request for a writ of execution on this judgment directed to Defendant Midwest Resale Specialist, Inc.

20. Minnesota law requires artificial entities, including the creditor in this matter, Midwest Bonding 2, to be represented by duly licensed and admitted attorneys in the State of Minnesota.

21. Defendant Hanson is not an attorney licensed or admitted to practice in the State of Minnesota.

22. Requesting a writ of execution on this alleged debt on behalf of Midwest Bonding 2 by Defendant Hanson was the unauthorized practice of law.

23. On or about September 5, 2025, Plaintiffs Calvin Morris and his wife, Celia Morris, served garnishment exemption claim forms under Minnesota law on Defendants and on the financial institution where Defendants had levied funds in the amount of $3,199.77 at Wells Fargo Bank.

24. In their garnishment exemption claim forms, each Plaintiff identified the funds being held as exempt from levy or garnishment because the funds were wages and each Plaintiff was exempt from wage garnishment as recipients of need-based aid under Minnesota law.

25. Plaintiff Calvin Morris indicated that all of the funds in both accounts levied by

Defendants consisted of wages and further indicated that his children received SNAP and EBT benefits through Hennepin County.

26. Plaintiff Calvin Morris also indicated that his wife received Medical Assistance from Hennepin County.

27. Plaintiff Calvin Morris served his garnishment exemption claim form by mail, fax, and email on Defendant Midwest Resale Specialist, Inc.

28. Plaintiff Celia Morris served her garnishment exemption claim form on Defendants by fax, mail, and email on or about September 5, 2025.

29. Plaintiff Celia Morris indicated that the levied funds were held in a joint account with her spouse, Calvin Morris, and that both accounts contained nothing but wages.

30. Plaintiff Celia Morris indicated that she received Medical Assistance through the county and that her children were on SNAP and EBT benefits through Hennepin County.

31. Plaintiff Celia Morris provided the case number for her need-based aid for her children's benefits and stated that she was a recipient of unemployment benefits as late as April 2025 and therefore exempt from wage garnishment, especially on a debt that was not hers in a joint account.

32. Both Plaintiffs attached three months of bank statements to their garnishment exemption claim forms and served these materials on Defendants and on Wells Fargo Bank by United States mail and fax.

33. Despite these valid exemption claims, Defendants nevertheless obtained a writ of execution against these funds and failed to release the funds as required by

Minnesota law.

34.    Despite having the opportunity to hire counsel and file an objection to the Plaintiffs' garnishment exemption claims, Defendants failed to timely file any such objection with the state court and instead retained Plaintiffs' funds.

35.    It was the unauthorized practice of law for Defendants, as non-lawyers, to draft and file legal documents in the state court system to obtain writs of execution and to serve levy paperwork on a financial institution.

36.    The above-described communications and conduct from Defendants toward each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2), 1692c(a)(1), 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(11), 1692e(13), 1692e(15), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### Illegal Collection Call on September 9, 2025

37.    On or about September 9, 2025 at approximately 3:04 PM, Plaintiff Celia Morris had a phone conversation with Defendant Aaron Hanson ("Hanson") regarding the release of levied funds.

38.    Defendant Hanson falsely represented that the bank controls whether levied funds are released and that the bank would send paperwork before anything could happen.

39.    Defendant Hanson falsely represented that he could not release any funds until the bank first transmitted its own documentation of the freeze.

40.    Defendant Hanson falsely represented that the bank required him to send a writ of

execution before any action could be taken.

41.  Defendant Hanson falsely represented that no funds could leave the bank until a court order or bank form arrived, and that Defendants lacked authority to release funds in the meantime.

42.  Defendant Hanson falsely represented that Plaintiff Calvin Morris was not exempt.

43.  Defendant Hanson falsely represented that wages deposited into the joint account were not protected because Plaintiff Calvin Morris is employed.

44.  Defendant Hanson falsely represented that the amount the bank was holding showed the funds should be treated as belonging to Plaintiff Calvin Morris and therefore not exempt.

45.  Defendant Hanson falsely framed the situation as a process controlled by bank and court paperwork and promoted a voluntary repayment arrangement while Defendants continued to hold the funds.

46.  Defendant Hanson's statements were materially false and misleading because Minnesota law required Defendants to promptly release the levied funds after receiving Plaintiffs' exemption claims or to timely file an objection through a licensed Minnesota attorney, and because both Plaintiffs' jointly held wage funds were exempt from garnishment under Minnesota law.

47.  When Defendant Hanson misrepresented that only the bank controlled whether levied funds could be released and that nothing could happen until bank paperwork arrived, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10) because it used false and deceptive means to collect or retain funds.

48. When Defendant Hanson stated that he could not release funds until he first received forms from the bank, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10) because it falsely described the legal process and Plaintiffs' rights after exemption claims were served.

49. When Defendant Hanson represented that the bank required him to send a writ of execution before any action could be taken, it was a violation of the FDCPA at 15 U.S.C. § 1692e, § 1692e(5), and § 1692e(10) because it misrepresented the law and implied a precondition that does not exist while taking steps that cannot legally be taken.

50. When Defendant Hanson maintained that no funds could leave the bank until a court order or bank form arrived and that Defendants lacked authority to release funds in the meantime, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10) because it falsely denied Plaintiffs' exemption rights and mischaracterized Defendants' obligations.

51. When Defendant Hanson denied that Plaintiff Calvin Morris was exempt and asserted that wages in the joint account were not protected, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(2)(A) because it misrepresented the legal status of the debt and the consumers' rights with respect to exempt funds.

52. When Defendant Hanson claimed that the amount the bank was holding should be treated as belonging to Plaintiff Calvin Morris and therefore not exempt, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10) because it deceptively attributed ownership and legal status to defeat exemptions.

53. When Defendant Hanson framed the situation as controlled by bank and court paperwork and promoted a voluntary repayment plan while continuing to hold exempt funds, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10) because it used deceptive means to induce payment and to delay release of exempt funds.

54. When Defendants continued to retain exempt funds after receiving Plaintiffs' exemption claims instead of promptly releasing the funds or timely filing a proper objection through licensed counsel, it was a violation of the FDCPA at 15 U.S.C. § 1692f and § 1692f(1) because it used unfair means and sought to collect or retain amounts not permitted by law.

55. When a non-lawyer employed by Defendants drafted and filed collection pleadings and requests for writs on behalf of a corporate creditor, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(5) because it constituted taking action that cannot legally be taken and misrepresented the legal process.

56. The above-described communications and conduct from Defendants toward each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2), 1692c(a)(1), 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(11), 1692e(13), 1692e(15), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### Illegal Collection Call on September 10, 2025

57. On or about September 10, 2025 at approximately 11:20 AM, Plaintiff Celia Morris

had a phone conversation with Defendant Aaron Hanson ("Hanson") concerning the continued retention and proposed disposition of funds levied from Plaintiffs' joint Wells Fargo accounts.

58. Defendant Hanson falsely represented that the funds being held, approximately $3,199.77, were associated with Plaintiff Calvin Morris and therefore not exempt.

59. Defendant Hanson falsely represented that the balance of the judgment exceeded $7,900 due to interest, and he leveraged that figure while proposing a one-time settlement equal to the funds being held in exchange for satisfaction and deletion of this judgment.

60. Defendant Hanson falsely represented that the money being held was Calvin's payroll, that Calvin is not exempt, and that wages deposited into the joint account are not protected.

61. Defendant Hanson falsely represented that because the bank determined the held amount was attributable to Calvin, those funds were not exempt and could be retained.

62. Defendant Hanson falsely represented that Plaintiffs had a joint responsibility for the debt if they claimed joint ownership of funds, and he framed the levy and retention as a bank-driven process based on a court order sent by Defendants.

63. Defendant Hanson falsely represented that he could not return funds to Plaintiff Celia Morris and that he could not release any funds until he spoke with Plaintiff Calvin Morris.

64. Defendant Hanson falsely represented that he would send a writ of execution to the

bank to get the funds released to Defendants and that the bank was advised the funds were not exempt, while continuing to withhold release.

65. Defendant Hanson conditioned any release of funds on Plaintiffs entering a repayment plan to satisfy the judgment.

66. Defendant Hanson's false statements misrepresented the levy and exemption process by denying the applicability of exemptions to jointly held wage deposits, by attributing ownership in a manner designed to defeat exemptions, by asserting a bank-controlled prerequisite process, and by conditioning release of exempt funds on payment arrangements.

67. When Defendant Hanson falsely stated the bank's attribution of the funds to Plaintiff Calvin Morris meant the funds were not exempt, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10).

68. When Defendant Hanson falsely asserted that wages in the joint account were not protected and that Plaintiff Calvin Morris was not exempt, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(2)(A).

69. When Defendant Hanson falsely framed the process as bank-controlled based on a court order sent by Defendants and used that framing to justify continued retention, it was a violation of the FDCPA at 15 U.S.C. § 1692e and § 1692e(10).

70. When Defendant Hanson falsely conditioned the release of funds on Plaintiffs agreeing to a repayment plan or settlement, it was a violation of the FDCPA at 15 U.S.C. § 1692f and § 1692f(1).

71. When Defendant Hanson falsely represented that he would send a writ of execution

and used that to justify continued withholding of funds that were claimed as exempt, it was a violation of the FDCPA at 15 U.S.C. § 1692e, § 1692e(5), and § 1692e(10).

72. The above-described communications and conduct from Defendants toward each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2), 1692c(a)(1), 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(11), 1692e(13), 1692e(15), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### Illegal Wage Garnishment

73. Defendants Midwest and Aaron Hanson drafted and served wage garnishment papers on Plaintiff Calvin Morris's employer, Evergreen.

74. Defendants undertook these actions without the involvement of a duly licensed Minnesota attorney and thereby engaged in the unauthorized practice of law.

75. Defendants continued to pursue the employer wage garnishment despite having received a valid garnishment exemption claim form from Plaintiff Calvin Morris.

76. Defendants failed and refused to withdraw the asserted wage garnishment with Evergreen after receipt of Plaintiff's exemption claim.

77. Defendants' actions were calculated to pressure payment on a consumer debt by employing legal process they were not entitled to use and by disregarding Plaintiff's exemption rights under Minnesota law.

78. When Defendants drafted and served employer wage garnishment papers without a licensed Minnesota attorney, it was a violation of the FDCPA at 15 U.S.C. § 1692e

and § 1692e(5) because they took action that cannot legally be taken and misrepresented their legal authority to use that process.

79. When Defendants caused communications to Evergreen about the alleged debt through garnishment papers, it was a violation of the FDCPA at 15 U.S.C. § 1692c(b) because they communicated with a third party concerning the debt outside the bounds of lawful process.

80. When Defendants issued or served garnishment papers that were not lawfully authorized due to the unauthorized practice of law, it was a violation of the FDCPA at 15 U.S.C. § 1692e(9) and § 1692e(13) because they represented documents as authorized by a court or as legal process when they were not, and mischaracterized the nature of the papers.

81. When Defendants implied or suggested that their communications and filings were from or reviewed by an attorney, it was a violation of the FDCPA at 15 U.S.C. § 1692e(3) because they falsely suggested attorney involvement.

82. When Defendants continued to maintain and pursue the employer wage garnishment after receiving Plaintiff's exemption claim, it was a violation of the FDCPA at 15 U.S.C. § 1692f and § 1692f(1) because it used unfair means and attempted to collect or retain amounts not permitted by law.

83. When Defendants ignored the exemption claim rather than promptly withdrawing the employer garnishment or filing a proper objection through a licensed Minnesota attorney, it was a violation of the FDCPA at 15 U.S.C. § 1692e, § 1692e(2)(A), and § 1692e(10) because they misrepresented the legal status of the debt and used

deceptive means to collect.

84.    When Defendants threatened or suggested further garnishment or continuation of the wage hold with Evergreen absent lawful authority, it was a violation of the FDCPA at 15 U.S.C. § 1692e(5) because they threatened to take action that cannot legally be taken.

85.    When Defendants used the employer garnishment to pressure payment from exempt wages, it was a violation of the FDCPA at 15 U.S.C. § 1692f because it constituted an unfair or unconscionable means to collect a consumer debt.

86.    When Defendants' filings and employer-directed papers obscured or failed to accurately communicate that the debt was disputed and subject to claimed exemptions, it was a violation of the FDCPA at 15 U.S.C. § 1692e(8) because they communicated false credit information and failed to communicate that the debt was disputed.

87.    The above-described communications and conduct from Defendants toward each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2), 1692c(a)(1), 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(11), 1692e(13), 1692e(15), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### Summary

88.    The above-described collection conduct by each Defendant in their efforts to collect this alleged debt from each Plaintiff were oppressive, deceptive, misleading, unfair,

and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

89. These collection actions taken by each Defendant, and the collection employees employed by that Defendant, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

90. These violations by each Defendant were knowing, willful, negligent and/or intentional, and these Defendants did not maintain procedures reasonably adapted to avoid any such violations.

91. Each Defendant's collection efforts with respect to this alleged debt from each Plaintiff caused each Plaintiff to suffer concrete and particularized harm because the FDCPA provides them with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

92. Each Defendant's deceptive, misleading and unfair representations with respect to its collection efforts were material misrepresentations that affected and frustrated each Plaintiff's ability to intelligently respond to these Defendants' collection efforts because they could not adequately respond to that Defendant's demand for payment of this debt.

### Respondeat Superior Liability

93. The acts and omissions herein of the individuals employed to collect debts by each Defendant, and the other debt collectors employed as agents of Defendant who communicated with each Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal,

Defendant.

94. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

95. By committing these acts and omissions against each Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, the Defendants.

96. Each Defendant is therefore liable to each Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the federal law cited herein in its attempts to collect this debt from each Plaintiff.

## **TRIAL BY JURY**

97. Each Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **CAUSES OF ACTION**

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 *et seq.***

98. Each Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. Defendants are debt collectors who used false, deceptive, and unfair means to collect a consumer debt in violation of the FDCPA.

100. When Defendants represented that bank paperwork and a writ of execution were prerequisites to releasing funds after receipt of Plaintiffs' exemption claims, it violated 15 U.S.C. § 1692e and § 1692e(10).

101. When Defendants stated or implied that they could not release funds until a bank form or court order arrived, it violated 15 U.S.C. § 1692e and § 1692e(10).

102. When Defendants represented that the bank required Defendants to send a writ of execution as a condition for release, it violated 15 U.S.C. § 1692e, § 1692e(5), and § 1692e(10).

103. When Defendants denied Plaintiff Calvin Morris's exemption and asserted that wages in a joint account were not protected, it violated 15 U.S.C. § 1692e and § 1692e(2)(A).

104. When Defendants attributed ownership of the levied funds to Plaintiff Calvin Morris to defeat exemptions and justified retention on that basis, it violated 15 U.S.C. § 1692e and § 1692e(10).

105. When Defendants conditioned release of claimed-exempt funds on a payment plan or settlement, it violated 15 U.S.C. § 1692f and § 1692f(1).

106. When Defendants continued to retain claimed-exempt funds after receiving exemption claims instead of promptly releasing the funds or timely filing a proper objection through licensed counsel, it violated 15 U.S.C. § 1692f and § 1692f(1).

107. When Defendants drafted, filed, and served garnishment and writ-related papers on behalf of a corporate creditor without a licensed attorney, it violated 15 U.S.C. § 1692e and § 1692e(5).

108. When Defendants communicated with Plaintiff's employer through garnishment papers outside the bounds of lawful process and to pressure payment, it violated 15 U.S.C. § 1692c(b).

109. When Defendants issued or served papers represented as court-authorized legal process despite the unauthorized practice of law, it violated 15 U.S.C. § 1692e(9) and § 1692e(13).

110. When Defendants implied attorney involvement or review in connection with their filings and employer-directed papers, it violated 15 U.S.C. § 1692e(3).

111. When Defendants failed to accurately communicate that the debt was disputed and subject to claimed exemptions in their employer-directed communications, it violated 15 U.S.C. § 1692e(8).

112. Plaintiff seeks statutory damages, actual damages, and attorney's fees and costs under 15 U.S.C. § 1692k.

113. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to each Plaintiff.

114. As a result of Defendant's violations of the FDCPA, each Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

**COUNT II.**

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

115.    Defendants prepared, signed, filed, and served garnishment, levy, and writ-related papers in Minnesota without using a Minnesota-licensed attorney.

116.    Defendants communicated legal advice about exemptions, ownership, and release procedures while acting for a corporate creditor without licensed counsel.

117.    Defendants' conduct constituted the unauthorized practice of law under Minn. Stat. § 481.02 because only a duly admitted attorney may prepare legal documents, appear in proceedings, or give legal advice on behalf of an artificial entity in Minnesota.

118.    Each Plaintiff was injured by the unlawful initiation and continuation of garnishment processes that would not have occurred but for Defendants' unauthorized practice of law.

119.    Each Plaintiff seeks damages, statutory remedies, equitable relief, and attorney's fees and costs as permitted by law.

120.    Each Plaintiff further seeks a permanent injunction prohibiting Defendants and their officers, employees, and agents from preparing, signing, filing, serving, or prosecuting any legal pleadings, writs, levies, garnishments, or other legal process in Minnesota on behalf of any person or entity unless and until such actions are undertaken through a Minnesota-licensed attorney.

121.    Each Plaintiff seeks a permanent injunction prohibiting Defendants from providing legal advice regarding exemptions, ownership of funds, or release procedures unless

such communications are made through a Minnesota-licensed attorney.

122. Each Plaintiff seeks an order compelling Defendants to immediately withdraw any pending levies, writs, or employer garnishments initiated without licensed counsel, to notify any affected employers and financial institutions of the withdrawal, and to release any funds restrained as a result of the unauthorized practice of law.

123. Each Plaintiff seeks declaratory relief that Defendants' conduct constitutes the unauthorized practice of law and that any documents filed or served as a result of such conduct are void or of no legal effect.

## COUNT III.

## WRONGFUL GARNISHMENT AND VIOLATIONS OF MINNESOTA GARNISHMENT PROCEDURES

## MINN. STAT. §§ 571.914 AND 571.915

124. Each Plaintiff served valid garnishment exemption claim forms identifying exempt wages and public benefit–supported funds.

125. Defendants failed to promptly release the levy or timely file a proper objection through licensed counsel as required by Minnesota law.

126. Defendants continued to hold and pursue garnishment contrary to the statutory objection-and-hearing framework set forth in Minn. Stat. §§ 571.914 and 571.915.

127. Each Plaintiff was harmed by the continued restraint and loss of access to exempt funds.

128. Each Plaintiff seeks actual damages, statutory remedies, and appropriate equitable relief including orders directing withdrawal and release.

## COUNT IV.

## VIOLATION OF WAGE-GARNISHMENT LIMITATIONS

## MINN. STAT. § 571.922

129.   Defendants pursued and maintained wage garnishment contrary to Minnesota's percentage caps and protections for earnings.

130.   Defendants treated wages deposited into a joint account as non-exempt and disregarded statutory limits on garnishment of disposable earnings.

131.   This conduct violated Minn. Stat. § 571.922 and caused financial harm and loss of use of exempt earnings.

132.   Each Plaintiff seeks damages and equitable relief restoring the status required by statute.

## COUNT V.

## VIOLATION OF MINNESOTA EXEMPTION STATUTE

## MINN. STAT. § 550.37

133.   Each Plaintiff's funds were exempt as earnings and by virtue of need-based public benefits received by the household.

134.   Defendants nevertheless treated the funds as garnishable and refused to release them after receipt of exemption claims.

135.   This conduct violated Minn. Stat. § 550.37 and directly caused loss of exempt assets and related harms.

136.   Each Plaintiff seeks damages, declaratory relief confirming the exempt status, and restitution of all improperly held funds.

## COUNT VI.

## MINNESOTA COLLECTION AGENCIES ACT VIOLATIONS

## MINN. STAT. § 332.37

137. Defendants used deceptive and misleading representations about legal process, exemptions, and authority to garnish while collecting a consumer debt.

138. Defendants communicated with third parties and leveraged employer-side garnishment outside lawful bounds.

139. Such conduct violates Minn. Stat. § 332.37 when undertaken by a collector, debt buyer, or collection agency.

140. Each Plaintiff seeks damages, civil penalties and remedies authorized by Chapter 332, and attorney's fees and costs.

## COUNT VII.

## MINNESOTA CONSUMER FRAUD ACT MINN. STAT. § 325F.69 AND

## PRIVATE ENFORCEMENT MINN. STAT. § 8.31, SUBD. 3a

141. Defendants made materially misleading statements and omissions regarding the levy and exemption process to induce payment and to retain exempt funds.

142. Defendants' deceptive practices occurred in the course of collecting a consumer debt.

143. This conduct violates Minn. Stat. § 325F.69 and is enforceable by a private party under Minn. Stat. § 8.31, subd. 3a.

144. Each Plaintiff seeks damages, equitable relief including restitution and injunctive relief, and attorney's fees.

## COUNT VIII.

## ABUSE OF PROCESS

145. Defendants used writs, levies, and employer garnishment primarily to coerce payment from exempt funds rather than to secure a legitimate adjudication under the statutory procedures.

146. Defendants pursued process in a manner not proper in the regular conduct of the proceeding, including continuing garnishment despite valid exemptions and without timely objection by licensed counsel.

147. Each Plaintiff suffered damages from the improper use of legal process, including loss of exempt funds resulting in three closed bank accounts and related harms.

148. Each Plaintiff seeks compensatory and punitive damages as allowed by law.

## COUNT IX.

## CONVERSION

149. Defendants wrongfully exercised dominion and control over each Plaintiff's exempt funds after receiving exemption claims and without court authority.

150. Defendants' refusal to release the funds interfered with each Plaintiff's possessory rights.

151. Each Plaintiff suffered pecuniary and consequential damages as a result of the wrongful detention.

152. Each Plaintiff seeks judgment for the value of the converted funds and all consequential damages.

## COUNT X.

### CIVIL THEFT UNDER MINN. STAT. § 604.14

153. Defendants intentionally retained and exerted control over money belonging to each Plaintiff knowing that that Plaintiff claimed exemptions and that continued retention lacked lawful authority.

154. This conduct constitutes civil theft under Minn. Stat. § 604.14.

155. Each Plaintiff seeks statutory remedies including damages and, where applicable, enhanced or punitive damages as permitted by statute.

## COUNT XI.

### UNJUST ENRICHMENT

156. Defendants were unjustly enriched by retaining and leveraging funds that Minnesota law required them to release.

157. Equity and good conscience require that Defendants disgorge and return the benefits wrongfully retained.

158. Each Plaintiff seeks restitution, disgorgement, and equitable relief restoring the parties to their lawful positions.

## COUNT XII.

### NEGLIGENCE PER SE

159. Defendants violated safety and conduct statutes designed to protect consumers from unlawful legal activity and wrongful garnishment, including Minn. Stat. § 481.02, Minn. Stat. §§ 571.914 and 571.915, Minn. Stat. § 571.922, and Minn. Stat. § 550.37.

160. These statutory violations establish duty and breach as a matter of law.

161. Each Plaintiff suffered damages proximately caused by Defendants' statutory noncompliance, including deprivation of exempt funds and related losses.

162. Each Plaintiff seeks compensatory damages and any additional relief the Court deems just and proper.

## COUNT XIII.

### PUNITIVE DAMAGES PURSUANT TO MINN. STAT. §549.20

163. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

164. Plaintiffs have made a *prima facie* case that Defendants deliberately disregarded Plaintiffs' rights pursuant to Minn. Stat. § 549.20.

165. Defendants are jointly and severally liable for punitive damages because of their deliberate disregard for the rights and safety of others.

166. Defendants engaged in a sustained pattern of conduct that was not accidental, negligent, or the product of mistake, but was instead knowing, deliberate, calculated, and carried out with conscious or reckless disregard for the rights and safety of each Plaintiff.

167. Defendants repeatedly chose to violate clear statutory commands governing garnishment, exemptions, and the practice of law in Minnesota, and they continued these violations even after receiving notice that their conduct was unlawful.

168. Defendants knowingly retained exempt wages belonging to each Plaintiff after receiving detailed exemption claim forms supported by bank statements, wage

information, and documentation of need-based public benefits. Defendants understood that Minnesota law required them either to promptly release the levied funds or to timely file an objection through a licensed Minnesota attorney.

169. Rather than comply, Defendants deliberately chose to hold the money, leverage it for settlement demands, and use it as coercive pressure to force payments that Defendants knew were not legally owed.

170. Defendants further engaged in the unauthorized practice of law, intentionally preparing, signing, filing, and serving legal process on behalf of a corporate creditor without the involvement of a Minnesota-licensed attorney.

171. Defendants did so not once, but repeatedly—drafting writ-related filings, issuing garnishment papers, and initiating employer-side wage holds—despite knowing they lacked legal authority to perform such acts.

172. Defendants' conduct in continuing to prepare and use these legal documents was not inadvertent; it was a considered choice made to expedite collection efforts while bypassing the legal constraints that apply to licensed attorneys.

173. Defendants reinforced these unlawful actions with deliberate misrepresentations made directly to Plaintiffs.

174. Defendants knowingly told Plaintiffs that bank paperwork, court forms, and writs of execution controlled whether exempt funds could be released, even though Defendants understood that Minnesota law required immediate release of exempt funds once exemption claims were received.

175. Defendants misrepresented that wages in a joint account were not protected, falsely

denied the applicability of exemptions, and falsely attributed ownership of the funds in order to defeat protections to which Plaintiffs were entitled.

176. Defendants' misrepresentations were designed to deceive vulnerable consumers— one of whom was the sole wage earner for a household receiving SNAP, EBT, Medical Assistance, and unemployment benefits—into believing they had no rights and no ability to stop Defendants from taking their money.

177. Defendants also purported to communicate with Plaintiffs' employer through garnishment papers that Defendants knew were legally defective, and they used this threat of employer contact as additional pressure to coerce payments.

178. Each of these acts required affirmative steps, intentional choices, and preparation of documents and communications that could not have occurred by accident or oversight.

179. Defendants' conduct was malicious because it demonstrated an intention to injure Plaintiffs by depriving them of exempt wages needed for basic living expenses, and it was carried out despite actual knowledge of the harm being inflicted on a low-income family.

180. Defendants' conduct was willful because they acted with awareness of the applicable statutes governing garnishment, exemptions, and attorney involvement, yet chose to disregard those statutes in order to advance their collection efforts.

181. Defendants' conduct was in conscious disregard of Plaintiffs' rights because Defendants were repeatedly informed—through exemption claims, statutory citations, and Plaintiffs' explanations—of Plaintiffs' protected status, yet

Defendants persisted.

182.   The pattern of conduct alleged herein was not isolated.

183.   Defendants followed the same approach across multiple communications, multiple collection actions (levy, wage garnishment, employer contact), multiple misrepresentations, and multiple failures to comply with statutory requirements.

184.   This repeated misconduct reflects a broader and deliberate method of collection that places Defendants' own financial interests above the rights and legal protections afforded to Minnesota consumers.

185.   Because Defendants acted with willful indifference, conscious disregard, and malicious intent toward the rights and safety of each Plaintiff, punitive damages are necessary and appropriate to punish Defendants and to deter similar conduct by them and others in the future.

186.   Plaintiffs therefore seek an award of punitive damages against Defendants, jointly and severally, in an amount to be determined by a jury after a trial on the merits.

### **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff respectfully requests that judgment be entered in their favor and against Defendants, and that the Court award the following relief:

- for statutory damages, actual damages, and attorney's fees and costs under 15 U.S.C. § 1692k for violations of the Fair Debt Collection Practices Act, with all damages that are not liquidated to be determined by a jury after a trial on the merits;

- for a permanent injunction under Minn. Stat. § 481.02 prohibiting Defendants and their officers, employees, and agents from preparing, signing, filing, serving, or

prosecuting any legal pleadings, writs, levies, garnishments, or other legal process in Minnesota on behalf of any person or entity unless such actions are undertaken through a Minnesota-licensed attorney;

- for a permanent injunction requiring Defendants to cease giving legal advice about exemptions, ownership of funds, or release procedures unless such communications are made through a Minnesota-licensed attorney;

- for declaratory relief that Defendants' conduct constitutes the unauthorized practice of law and that any documents filed or served as a result of such conduct are void or of no legal effect;

- for orders compelling Defendants to immediately withdraw any pending levies, writs, or employer garnishments initiated without licensed counsel, to notify all affected employers and financial institutions of the withdrawal, and to release and return all funds restrained or obtained as a result of the unauthorized practice of law;

- for actual damages, statutory remedies, and equitable relief, including prompt release and return of funds, for violations of Minnesota's garnishment procedures under Minn. Stat. §§ 571.914 and 571.915, in a reasonable amount to be determined by a jury after a trial on the merits;

- for damages and equitable relief for violations of Minnesota's wage-garnishment limitations under Minn. Stat. § 571.922, in a reasonable amount to be determined by a jury after a trial on the merits;

- for damages, declaratory relief confirming exempt status, and restitution for

violations of Minnesota's exemption statute under Minn. Stat. § 550.37, in a reasonable amount to be determined by a jury after a trial on the merits;

- for damages, civil penalties, and attorney's fees and costs for violations of the Minnesota Collection Agencies Act, Minn. Stat. § 332.37 and related provisions, as permitted by law, in a reasonable amount to be determined by a jury after a trial on the merits;

- for damages, restitution, injunctive relief, and attorney's fees under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, and private enforcement pursuant to Minn. Stat. § 8.31, subd. 3a, in a reasonable amount to be determined by a jury after a trial on the merits;

- for compensatory and punitive damages for abuse of process, in a reasonable amount to be determined by a jury after a trial on the merits;

- for judgment in the value of the converted funds and all consequential damages for conversion, in a reasonable amount to be determined by a jury after a trial on the merits;

- for statutory remedies, damages, and any enhanced or punitive damages permitted under Minn. Stat. § 604.14 for civil theft, in a reasonable amount to be determined by a jury after a trial on the merits;

- for restitution, disgorgement, and equitable relief, including imposition of a constructive trust as necessary, for unjust enrichment;

- for compensatory damages for negligence per se based on violations of Minn. Stat.

§ 481.02, Minn. Stat. §§ 571.914 and 571.915, Minn. Stat. § 571.922, and Minn. Stat. § 550.37, in a reasonable amount to be determined by a jury after a trial on the merits;

- for an award of punitive damages from Defendants, jointly and severally, pursuant to Minn.Stat. §549.20, in an amount to be determined at trial;

- for costs of suit and attorney's fees as otherwise provided by state and federal law

- for pre-judgment and post-judgment interest at the maximum rate allowed by law

- and for such other and further legal and equitable relief as the Court deems just and proper;

Respectfully submitted,

Dated: December 12, 2025                **THE BARRY LAW OFFICE, LTD**

By: s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## VERIFICATION OF AMENDED COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF HENNEPIN          )

Pursuant to 28 U.S.C. § 1746, Plaintiff Calvin Morris verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on   12/12/2025                    _____Calvin Morris Jr (Dec 12, 2025 14:06:52 CST)_____
                                           Signature

-33-

## VERIFICATION OF AMENDED COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA      )
                                    ) ss

COUNTY OF HENNEPIN     )

Pursuant to 28 U.S.C. § 1746, Plaintiff Celia Morris verifies, certifies, and declares as follows:

1.  I am a Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.  Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on   12/11/2025            Celia Morris (Dec 11, 2025 23:00:36 CST)

                                             Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cellular phones**. The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- telephone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss

prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide,**

**destroy or alter ESI.** This is not a concern that is unique to you or your organization. Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory**

**and description of the systems and media to be preserved.** Alternatively, if you promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.** If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court. I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.** If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention. Thank you for your anticipated cooperation in this vital matter.